Judge Marc L. Barreca
Chapter 11
Response due: February 20, 2014
Hearing: Friday, February 27, 2014 1:30 p.m.

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>NATURAL MOLECULAR TESTING CORPORATION,<br><br>    Debtor. | Bankr. Case No. 13-19298-MLB |
| NATURAL MOLECULAR TESTING CORPORATION, a Washington corporation,<br><br>    Plaintiff,<br><br>v.<br><br>CENTERS FOR MEDICARE & MEDICAID SERVICES, *et. al*,<br><br>    Defendants. | Adv. Case No. 13-01635-MLB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS DEBTOR'S ADVERSARY COMPLAINT** |

**I. THE BANKRUPTCY CODE DOES NOT ESTABLISH A BASIS FOR JURISDICTION OF THIS MEDICARE REIMBURSEMENT DISPUTE**

NMTC cannot establish jurisdiction under 28 U.S.C. § 1334 (Debtor's Brief at 11-13), because the Medicare Act expressly removes such jurisdiction. *See infra*. Specifically, Section 405(h) of the Social Security Act (codified at 42 U.S.C. § 405(h)) is expressly made applicable to

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 1 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Case 13-01635-MLB    Doc 20    Filed 02/24/14    Ent. 02/24/14 18:08:02    Pg. 1 of 15

Medicare matters by 42 U.S.C. § 1395ii.  As originally enacted, § 405(h) provided that: "<u>No action</u> against the United States, the Board, or any officer or employee thereof <u>shall be brought</u> under <u>section 24</u> of the Judicial Code of the United States <u>to recover on any claim arising under this title</u>." Social Security Amendments of 1939, Pub.L.No. 379, § 205(h), 53 Stat. 1360, 1371 (1939) (emphasis added).  Section 24 (then codified at 28 U.S.C. § 41), in turn, contained "virtually all of the jurisdictional grants to the district courts <u>including bankruptcy jurisdiction</u>." *In re St. Johns Home Health Agency*, 173 B.R. 238, 244 (Bankr. S.D. Fla. 1994) (emphasis added).  Thus, Congress indisputably barred bankruptcy jurisdiction over Medicare disputes.  *Id.*; *In re Upsher Labs.*, 135 B.R. 117, 119 (Bankr. W.D. Mo. 1991).  Although § 405(h) was subsequently amended (to reflect subsequent recodifications that had divided section 24 of the Judicial Code into discrete code sections under Title 28 of the U.S. Code), this technical amendment expressly stated that it was not intended to change the substance of the existing rules.[1]

The two Courts of Appeals that have most thoroughly analyzed the scope of the current version of § 405(h) – *Bodimetric Health Servs, Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 489 (7th Cir. 1990) and *Midland Psychiatric Assocs. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998) – agree that it remains coextensive with the original version of § 405(h), which barred any action from being brought against Medicare under section 24 of the Judicial Code.  While *Bodimetric* and *Midland* relate to § 405(h)'s bar of section 1332 diversity jurisdiction, the rationale of these decisions applies

---

1 Instead, the amendment was merely a "Technical Correction" and was not meant to change the prior law.  *Bodimetric Health Servs, Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 489 (7th Cir. 1990). Moreover, Congress's intent that the amendments not change the substantive rule is reflected in statutory language in the Statutes at Large that controls over the literal wording of 42 U.S.C. § 405(h).  See Pub. L. No. 98-369, 98 Stat. 1162, Section 2664(b); *Bodimetric*, 903 F.2d at 489, citing *Stephan v. U.S.*, 319 U.S. 423, 426 (1943)("[T]he code cannot prevail over the Statutes at Large when the two are inconsistent.").  Thus, Congress statutorily "expressed its intent not to alter the substantive scope of section 405(h)."  *Bodimetric*, 903 F.2d at 489.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 2 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

in all respects to section 1334 jurisdiction as well, because section 24 of the Judicial Code contained the same provisions that were later recodified as 28 U.S.C. §§ 1331 through 1348. Following this rationale, numerous bankruptcy courts have recognized that § 405(h) bars them from assuming jurisdiction over Medicare disputes under 28 U.S.C. § 1334. *In re House of Mercy, Inc.*, 353 B.R. 867 (Bankr. W.D. La. 2006); *In re Home Comp Care v. U.S. Dep't of Health and Human Servs.*, 221 B.R. 202, 206 (N.D. Ill. 1998); accord, *St. John's Home Health*, 173 B.R. at 244.

And the overwhelming weight of case law squarely supports the conclusion that bankruptcy courts lack subject matter jurisdiction to resolve issues "arising under" Medicare.[2] Chiefly germane to this case, numerous bankruptcy courts have expressly found that subject matter jurisdiction is lacking over Medicare reimbursement disputes prior to administrative exhaustion. *E.g.*, *House of Mercy, Inc.*, 353 B.R. at 871-872 ("[t]the misfortune that a provider is in bankruptcy when he has a reimbursement dispute with the Secretary should not upset the careful balance between administrative and judicial review") (cites omitted); *St. Johns Home Health*, 173 B.R. at 246; *AHN Home Care LLC v. HCFA*, 222 B.R. 804, 809-810 (Bankr. N.D. Tex. 1998); *In re Southern Inst. for Treatment & Evaluation*, 217 B.R. 962, 965 (Bankr. S.D. Fla. 1998).

---

2  *E.g., Matter of Visiting Nurses Assoc. of Tampa Bay, Inc.*, 121 B.R. 114, 118 (Bankr. M.D. Fla. 1990)("overwhelming consensus" is that bankruptcy courts do not have jurisdiction over challenges between providers and the Secretary or review board without prior exhaustion of administrative remedies); *accord*, *In re Hosp. Staffing Servs., Inc.*, 258 B.R. 53 (S.D. Fla. 2000); *U.S. Dep't of HHS v. James*, 256 B.R. 479 (W.D. Ky. 2000); *In re Mid-Delta Health Sys., Inc.*, 251 B.R. 811 (Bankr. N.D. Miss. 1999); *AHN Homecare, LLC v. HCFA*, 222 B.R. 804 (Bankr. N.D. Tex. 1998); *Home Comp Care v. U.S. Dept. of HHS*, 221 B.R. 202 (N.D. Ill. 1998); *In re Southern Inst. for Treatment & Evaluation*, 217 B.R. 962 (Bankr. S.D. Fla. 1998); *In re The Orthotic Ctr., Inc.*, 193 B.R. at 834; *In re Upsher Labs.*, 135 B.R. 117, 119-20 (Bankr. W.D. Mo. 1991)(since district court could not take jurisdiction prior to exhaustion of administrative remedies by exercising bankruptcy jurisdiction prior to technical revision, it cannot do so after revision); *Sullivan v. Hiser (In re St. Mary's Hospital)*, 123 B.R. 14, 17 (E.D. Pa. 1991)(bankruptcy actions over Medicare were barred under prior version of 405(h) and remain so today).

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 3 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

In *Home Comp Care*, *supra*, 221 B.R. 202, the Secretary imposed a "withholding of one hundred percent of appellant's current Medicare payments," and the provider commenced an adversary action alleging a violation of the automatic stay and seeking turnover as a core proceeding of the bankruptcy estate. *Id*. at 205. The bankruptcy court dismissed the action and the district court affirmed, holding that the "filing of a bankruptcy petition" does not "avoid the requisite administrative remedies provided for in Medicare reimbursement matters." *Id*. at 206 (citing legislative history of § 405(h)). As *Home Comp Care* further explained, the term "'arising under' [Medicare] is to be interpreted broadly," so that non-final withholding of payments – similar to the temporary suspension here – may not be addressed by the bankruptcy court. *Id.*

NMTC's case cited in support of their opposition, *Town & Country Home Nursing Services, Inc. v. Sullivan*, 963 F.2d 1146 (9th Cir. 1992), is inapposite on several fronts and fails to account for any of the legislative history behind § 405(h). Moreover, it was decided well before the Supreme Court's broad "arising under" Medicare pronouncements in *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 13 (2000). The case is distinguishable because its holding was that government "offsets" against assets of the estate were a waiver of sovereign immunity under 11 U.S.C. § 106(a).[3] *Town & Country*, 963 F.2d at 1152-53. Thus, the Ninth Circuit viewed this "offset" – a form of

---

[3] *See United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 923 (9th Cir. 2009) ("Although the concepts are related, sovereign immunity and subject matter jurisdiction present distinct issues."). Here, the Secretary's motion to dismiss is based upon this Court's lack of subject matter jurisdiction, which is a non-waivable limitation on a federal court. S*ee Idaho v. Coeur d'Alen Tribe of Idaho*, 521 U.S. 261, 267 (1997), *also see Gonzalez v. Thayer*, -- U.S.--, 132 S.Ct. 641, 648 (2012) (subject matter jurisdiction can never be waived).

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 4 (13-01635-MLB)**

recovery of a determined Medicare overpayment – as an informal proof of claim and hence a waiver of sovereign immunity. *Id.*[4] Here, there are no offsets and no waiver.

Moreover, in *Town & Country* there was a determined Medicare overpayment amount, a debtor's agreement to repay the government through a promissory note, and a view that the debtor's counterclaims related to "property of the estate." None of which are present here. *Id*. at 1148, 1154. Further, unlike here, there was no Medicare reimbursement dispute or related payment suspension based on credible allegations of fraud. Finally, only briefly did the Court entertain questions as to the relationship between § 405(h) and § 1334. *Id*. at 1155. Indeed, it appears the Ninth Circuit was not presented with a history of the Medicare statute's bar on subject matter jurisdiction over Medicare disputes, 42 U.S.C. § 405(h), outside of the judicial review that is available only on a final agency decision made after an administrative hearing, 42 U.S.C. § 405(g).

As explained above, the Courts of Appeals that *have* had the occasion to consider the history of § 405(h) in extensive detail have fully appreciated the comprehensiveness and definitiveness of the jurisdictional bar. *Bodimetric*, 903 F.2d at 488-90 (7th Cir.) (finding that diversity jurisdiction based claim was precluded by § 405(h) regardless of technical omission); *Midland Psychiatric,* 145 F.3d 1004 (8th Cir.) (same). NMTC's adversary complaint challenging the Secretary's payment suspension, therefore, should still be dismissed for lack of subject matter jurisdiction.

---

4 Eight years later, though, when the Ninth Circuit considered foursquare the legal characterization of Medicare "offsets," it held that such "offsets" were an exercise of recoupment, and hence were permissible in bankruptcy. *Sims v. U.S. Dep't of Health and Human Servs, (In re TLC Hosps., Inc.)*, 224 F.3d 1008 (9th Cir. 2000). The Ninth Circuit has recognized that funds subject to recoupment are not a debtor's property at all. *In re Madigan*, 270 B.R. 749, 754 (9th BAP 2001); *see e.g., Newbery Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d 1392, 1399 (9th Cir. 1996) citing with approval Collier on Bankruptcy ¶553.03) (recoupment does not offend automatic stay). Hence, these later decisions strongly suggest the Circuit would read this situation differently if faced with it again.

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – 5
(13-01635-MLB)**

## II. THE EXCEPTION TO THE EXHAUSTION REQUIREMENT DOES NOT APPLY

Debtor is incorrect that this case presents one of those rare circumstances allowing judicial waiver of the exhaustion requirements. (Debtor's Br. at 14-15). To begin, waiver of the statute's exhaustion requirements is sparingly applied and is appropriate only where a plaintiff raises a colorable constitutional claim that is wholly collateral to a claim for benefits and where exhaustion would cause irreparable harm and be futile. *Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993). Numerous courts have concluded in cases arising under Medicare, however, that waiver is inappropriate. *See Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1115 (9th Cir. 2003).[5]

First, because repeated challenges to the constitutionality of the Secretary's suspension provisions already have been rejected, the Debtor has not presented a colorable constitutional claim. *See Clarinda Home Health*, 100 F.3d at 531; *Diagnostic Cardioline Monitoring of New York, Inc. v. Shalala*, No. 99-CV-5686, 2000 WL 1132273 *6 (E.D.N.Y. June 26, 2000); *Life Source Enterprises, Inc. v. Shalala*, No. Civ. A.SA-00-CA-0902HG, 2000 WL 33348793 *7 n.53 (W.D. Tex. Nov. 9, 2000). Even where complainants have challenged the indefinite duration of a payment suspension, they have not been met with success. For example, in *Life Source Enter., id.* at *6, the district court rejected a similar pitch and dismissed the complaint, finding that a Medicare payment suspension is a temporary measure and the provider will have its eventual "day in court" after administrative exhaustion. *Id.* In *Midwest Family Clinic, Inc. v. Shalala,* 998 F.Supp. 763, 770-71 (E.D. Mich. 1998), the court held that a Medicare payment suspension, even with no time limits, was constitutionally permissible. Here, the suspension's duration of 10 months to date, especially given the large volume of NMTC's claims (at least "89,000," Debtor's Br. at 7), is well within the Secretary's regulatory framework and hardly presents a colorable claim. *See Diagnostic Cardioline,* 2000 WL 1132273 at *6 (3-year Medicare payment suspension did not give rise to a "colorable constitutional claim").

---

5 NMTC's assertions aside, Br. at 13 n.16, *Kaiser* is squarely relevant here. There, the district court lacked jurisdiction over the debtors' due process claims arising under Medicare. Had the debtors filed their suit in bankruptcy court the result would have been the same, as the plenary powers of the bankruptcy court are no greater than those of the district court. *See* 28 U.S.C. § 157(a).

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 6 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Case 13-01635-MLB    Doc 20    Filed 02/24/14    Ent. 02/24/14 18:08:02    Pg. 6 of 15

Moreover, NMTC's challenge is not "'<u>entirely</u> collateral to [a] substantive claim of entitlement.'" *Bowen v. City of New York*, 476 U.S. 467, 483 (1986)(emphasis added). NMTC demands both injunctive relief against the suspension and payment of all suspended funds. This request for relief is simply not "collateral" to a substantive claim of entitlement. Rather, it *is* the claim of entitlement. *See Ancillary Affiliated Health Servs., Inc. v. Shalala*, 165 F.3d 1069, 1071 (7th Cir. 1998) (claims that ultimately demand a turnover of funds, regardless of the label attached to them, are not "wholly collateral"). Therefore, exhaustion cannot be waived.

Similarly, any express or implied assertions of economic hardship (Debtor's Br. at 15-16) also must fail, as they do not satisfy the type and degree of irreparable harm that are required to waive exhaustion. *Diagnostic Cardioline Monitoring*, 2000 WL 1132273 at * 6. Fundamentally, they also overlook the simple fact that participation in Medicare is purely voluntary. *Queen City Home Health Care Co. v. Sullivan*, 978 F.2d 236, 247 (6th Cir. 1992). "In enacting the Medicare program, Congress did not primarily seek to ensure the financial viability of individual health care institutions, but sought to ensure adequate health care for a specific group of people." *Baptist Hospital v. Sec'y of Health and Human Services*, 802 F.2d 860, 868 (6th Cir. 1986).

> [W]hen a medical supplier submits a claim for reimbursement, he clearly does so with knowledge that he is not guaranteed automatic recovery. Whether the carrier rejects the claim on the ground that it is fraudulent or not covered under Part B, for example, the medical supplier is aware that his submission is subject to scrutiny to ensure that he is entitled to be reimbursed. Thus, a supplier has little, if any, private interest in immediate reimbursement; he is, or should be, aware that Part B does not promise that he will always be paid upon his demand.

*Karnak Educational Trust v. Bowen*, 821 F.2d 1517, 1521 (11th Cir. 1987).

Finally, the Debtor cannot seriously contend that exhaustion of administrative remedies is futile or that it has no means for review at all. A fraud suspension is a "temporary administrative measure" that allows the Secretary "to conduct an investigation" into whether the claims are bona

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 7 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

fide or fraudulent. *Clarinda Home Health v. Shalala*, 100 F.3d 526, 530 (8th Cir. 1996). During a suspension, claims continue to be processed, but payment is not made. *Neurological Associates-H. Hooshmand v. Bowen*, 658 F. Supp. 468, 471 (S.D. Fla. 1987). To this end, CMS examines claims, requests underlying documentation, and determines whether an overpayment exists. 42 C.F.R. § 405.372(c)(2)(i). If CMS makes an overpayment finding, the suspension will culminate in an appealable determination "if the claims are subsequently denied." 61 Fed. Reg. 63740, 63743 (Dec. 2, 1996). If NMTC is dissatisfied with these findings, it may appeal these determinations through the carefully crafted Medicare review channels established by Congress. *See* Defendants' Motion to Dismiss at 5-6 (summarizing the review provisions for disputed Medicare claims).

### III. *ALL* SUSPENDED MEDICARE PAYMENTS ARE DISPUTED AND, THEREFORE, ARE NOT PROPERTY OF THE DEBTOR'S ESTATE

As we have already shown, a party to a payment dispute does <u>not</u> violate the automatic stay simply by acting "in resistance to the debtor's view of its rights[.]" *United States v. Inslaw*, 932. F.2d 1467, 1473 (D.C. Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992). As *Inslaw* illustrates, where a bankruptcy estate believes that an entity has improperly refused to pay a debt owed, the proper procedure is to apply for a turnover order under section 542 of the Bankruptcy Code. However, as settled case law and the turnover provisions themselves indicate, these provisions may not be used to "liquidate contract disputes or otherwise demand assets whose title is in dispute." *Inslaw*, 932 F.2d at 1472; *see also In re Teligent, Inc.,* 325 B.R. 134, 137-8 (Bankr. S.D.N.Y. 2005) (collecting cases); *In re Tri County Home Health Servs.*, 230 B.R. 106, 112 n.2 (Bankr. W.D. Tenn. 1999); Defendants' Motion at 20-21 (collecting cases).

The Secretary disputes the reimbursement of *all* suspended Medicare claims. Even though NMTC parses its arguments into pre- and post-suspension, and post-petition, fragments (Debtor's

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – 8
(13-01635-MLB)**

Br. at 8), none of these distinctions has any relevance here because we presently dispute the validity of *all* suspended claims on credible allegations of fraud. Fraud is a defense to payment, and the very possibility of fraud renders the right to payment in dispute. *In re The Orthotic Center, Inc.*, 193 B.R. 832, 834 (N.D. Ohio 1996) (fraud suspension is not a seizure of property of the estate because debtor's right to receive payments is in dispute, and payments are not property of the debtor until the dispute is decided in its favor); *In re Guiding Light Corp.*, 217 B.R. 493, 498 (Bankr. E.D. La. 1998) (no property interest in payments for Medicaid claims pending investigation for fraud).[6]

Aside from the Debtor's colorful characterizations of the Secretary's actions, (Debtor's Br. at 3), it is undisputed that CMS suspended payments to NMTC pursuant to the Medicare Act and its implementing regulations, which permit suspension when evidence of fraud has been discovered. 42 U.S.C. § 1395y(o); 42 C.F.R. § 405.371(a)(2).[7] Specifically, CMS implemented the payment suspension for reasons, among others, that claims "contained false diagnostic information," such as NMTC using a diagnosis code on the Medicare billing forms other than the actual code documented by the patient's physician.[8] Defendants' Attachment A at 1, 5. Thus, CMS suspended all of

---

[6] Contrary to Debtor's views (Debtor's Br. at 19), *Guiding Light* is directly on point. There, the state agency had conducted a post-payment review and suspended payments of reimbursement claims. *Id.*, 217 B.R. at 495.

[7] NMTC's arguments are plainly unsupported by CMS's Medicare Manuals. Debtor's Br. at 16, 20. Those provisions do not state that all suspended claims are presumptively payable. All these manuals do is instruct contractors on how to handle overpayments and how to establish an escrow for amounts that are ultimately determined to be "uncontested and due." Nothing in these Manual provisions deprives the Secretary of the right to make reimbursement determinations – including denials – during the suspension period.

[8] If true that NMTC has submitted 89,000 claims to Medicare in 2013 (Debtor's Br. at 7), some or many of which might contain false diagnostic data, the Medicare program is compelled all the more to evaluate these claims for their integrity and verify whether payment is actually owed.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 9
(13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Debtor's unpaid claims, pending an investigation into their validity, and none of the suspended funds constitute property of the Debtor's estate. *See also* Defendants' Motion at 20-23.

To bypass this unavoidable conclusion, the Debtor takes great pains to distinguish the service dates of its claims, and also asserts ownership of the claims on the basis that Medicare has "processed and approved" them. (Debtor's Br. at 8, 18-20.) First, it does not matter *when* NMTC submitted any of the suspended Medicare claims, because the payment suspension "applies to 100% of [NMTC's] billings." *Id*. at 1. Otherwise stated, the payment suspension does not distinguish the claims, nor should it, based on their dates of billing to Medicare or on the dates of services allegedly rendered, or whether the claims arose at all prior to the payment suspension. And that is because *all* suspended payments are presently under review for fraud. "The Department of Health and Human Services has a critical interest in maintaining the integrity of the Medicare program for the benefit of providers, patients, and taxpayers generally." *Neurological Associates-H. Hooshmand*, 658 F. Supp. 468, 472-73 (S.D. Fla. 1987). One goal of the fraud suspension regulations is "to protect the government from suffering greater losses." *Clarinda Home Health*, 100 F.3d at 529.

Second, the fact that Noridian may have "processed and approved" some or all of the suspended claims (Debtor's Br. at 8) is of little moment, because the administrative processing of claims on the front line, in a system as vast as Medicare, does not render such claims presumptively valid. Given over *one billion* Medicare claims processed each year, it is not "administratively feasible to routinely require, in advance of payment, full medical documentation." *See United States v. Sanet*, 666 F.2d 1370, 1372 (11th Cir. 1982). Further, Medicare reimbursements for discrete claims, which are simultaneously submitted through computerized electronic billing submissions, must be promptly processed. Thus, the system does not permit the contractor to determine at first hand the validity of each submitted claim, much less review the underlying medical records, which

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 10 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Case 13-01635-MLB    Doc 20    Filed 02/24/14    Ent. 02/24/14 18:08:02    Pg. 10 of 15

are not submitted with the claim in any event.

Upon receipt of a facially "clean claim," the contractor must issue an "initial" determination within 30 calendar days of receipt. 42 C.F.R. § 405.922. Due to these "prompt payment" requirements and the extremely large volume of claims, providers are essentially paid on an automated "honor system." *Bertschland Family Practice Clinic, P.C. v. Thompson*, No. IPO1-562-CH/F, 2002 WL 1364155 *2 (S.D. Ind. June 4, 2002). However, the act of processing the claim does not render that claim presumptively valid. [9] A contrary result would turn the Medicare program on its head, as it would forever brand a stamp of veracity on each claim that is processed, and automatically confer "entitlement" to payment on otherwise questionable claims.

For these reasons, NMTC's complaint that CMS caused processing difficulties with respect to laboratory claims during the first quarter of 2013 (Debtor's Br. at 6-7) is a red-herring and is readily dispatched. A fraud suspension freezes *all* payments relating to suspended claims, regardless of a claim's whereabouts in the processing pipeline. What Debtor actually mourns, but to no avail, is the timing of the *payment suspension* (April 24, 2013), which commenced shortly after CMS had resolved any alleged processing difficulties, but before funds were transferred to NMTC on the related claims.[10] But the timing of the suspension is beside the point, as CMS may suspend payments on evidence of fraud at any time. 42 U.S.C. § 1395y(o). The timing of claim submissions is also irrelevant, as 100% of NMTC's billings are now in question and under fraud review.

---

[9] For example, the contractor may reopen any claim that was previously "approved" and paid. For example, the contractor may reopen a claim at "any time" if there exists reliable evidence that the initial determination was "procured by fraud or similar fault." 42 C.F.R. § 405.980(b)(3).

[10] Prior to the payment suspension, CMS had advanced $4.2 million to NMTC on March15, 2013, which also undercuts any complaints that CMS's First Quarter glitches unfairly impacted the Debtor.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 11 (13-01635-MLB)**

Finally, *Medicar Ambulance v. Shalala*, 166 B.R. 918 (N.D. Cal. 1994) is unavailing because it fails to address the Supreme Court's analysis in *MCorp Fin.*, 502 U.S. 32, 41 (1991) ("We are not persuaded, however, that the automatic stay provisions of the Bankruptcy Code have any application to ongoing, nonfinal administrative proceedings.") *Medicar* also rests on the misconceived concession in that case that suspended payments were "property of the estate" and the flawed conclusion that prevention of Medicare fraud does not serve public policy, but only a pecuniary interest. *See* 166 B.R. 926-927. *Orthotic Center,* 193 B.R. at 834-835, rejected *Medicar* precisely for these reasons, holding that in a suspension for *fraud*, "the right to receive payments is in dispute," and policy concerns prevent "the bankruptcy court from becoming a haven for wrongdoers." Id., at 835. *Medicar* also overlooked the removal of bankruptcy jurisdiction by 42 U.S.C. § 405(h).

On these facts, NMTC cannot reasonably assert an undisputed right to any of the suspended Medicare funds. The suspension of payments, therefore, does not interfere with any legitimate interest the Debtor may claim in this proceeding For these reasons, we respectfully request dismissal of the adversary complaint.

DATED this 24th of February, 2014.

Respectfully submitted,

JENNY DURKAN
UNITED STATES ATTORNEY

 */s/ Christina Dimock*
CHRISTINA DIMOCK, WSBA E40159
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-4299

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – 12
(13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Case 13-01635-MLB    Doc 20    Filed 02/24/14    Ent. 02/24/14 18:08:02    Pg. 12 of 15

| | |
|---|---|
| 1 | Of Counsel: |
| 2 | |
| 3 | William B. Schultz, General Counsel |
| | Pamela K Parker, Chief Counsel, Region 10 |
| 4 | Janet Freeman, Assistant Regional Counsel |
| | Office of the General Counsel |
| 5 | U.S. Department of Health and Human Services |
| | 2201 Sixth Avenue, Suite 902 |
| 6 | Seattle, Washington 98121 |
| | Phone: (206) 615-2302 |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – 13
(13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers;

It is further certified that on this date, I electronically filed the above document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant(s):

Elizabeth H. Shea eshea@hackerwillig.com, debbie@hackerwillig.com; donna@hackerwillig.com; arnie@hackerwillig.com; kristen@hackerwillig.com; alena@hackerwillig.com; charlie@hackerwillig.com; doug@hackerwillig.com; ashley@hackerwillig.com; leah@hackerwillig.com; melissa@hackerwillig.com

Arnold M. Willig arnie@hackerwillig.com, debbie@hackerwillig.com; donna@hackerwillig.com; kristen@hackerwillig.com; alena@hackerwillig.com; charlie@hackerwillig.com; doug@hackerwillig.com; ashley@hackerwillig.com; eshea@hackerwillig.com

Frank T. Pepler frank.pepler@dlapiper.com, Carolyn.ernser@dlapiper.com

I further certify that on this date, I mailed by United States Postal Service the above document to the following non-CM/ECF participant(s)/CM/ECF participant(s), addressed as follows:

Lawrence J. Freedman
701 Pennsylvania Ave., NW, #900
Washington, DC 20004

//

//

//

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 14 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | |
|---|---|
| 1 | Hope Foster |
| 2 | Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. |
| | 701 Pennsylvania Avenue, NW, Suite 900 |
| 3 | Washington, DC  20004 |
| 4 | Dated this 24th day of February, 2014. |

*/s/ Laurie A. Gausta*
LAURIE A. GAUSTA, Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
Fax:   (206) 553-4067
E-mail: laurie.gausta@usdoj.gov

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – 15 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Case 13-01635-MLB    Doc 20    Filed 02/24/14    Ent. 02/24/14 18:08:02    Pg. 15 of 15