| | |
|---|---|
| Judge: | BARRECA |
| Chapter: | 11 |
| Hearing Date: | 08/28/2014 |
| Place: | Seattle |
| Time: | 1:30 pm |
| Response Date: | 08/21/2014 |

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| In re: | ) | Bankr. Case No. 13-19298-MLB |
| | ) | |
| NATURAL MOLECULAR TESTING | ) | |
| CORPORATION, | ) | |
| | ) | |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| NATURAL MOLECULAR TESTING | ) | Adv. Case No. 13-01635-MLB |
| CORPORATION, a Washington corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **JUDGMENT ON THE PLEADINGS** |
| CENTERS FOR MEDICARE & MEDICAID | ) | |
| SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

By this motion, Sylvia M. Burwell, in her official capacity as the Secretary of the U.S.

Department of Health and Human Services ("Secretary" or "Defendant"); Marilyn Tavenner, as the

Administrator of the Centers for Medicare & Medicaid Services; the Centers for Medicare &

**DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS – 1
(13-01635-MLB)**

Medicaid Services ("CMS"); and Noridian Healthcare Solutions, LLC ("Noridian"),[1] hereby move the Court to dismiss the Amended Adversary Complaint pursuant to Fed. R. Civ. P. 12(c) (made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7012), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

While this Motion on the Pleadings contains some supplemental arguments regarding the subject matter bar to jurisdiction in this case, the Secretary brings this Motion primarily on the grounds briefed to this Court on her Motion to Dismiss. The Secretary does not do so to waste this Court's time. Rather the Secretary is required to do so for the following reason:

The Secretary respectfully disagrees with this Court's March 27th denial of the motion to dismiss on jurisdictional grounds and its reliance therein on *Town & Country*, 963 F.2d 1146 (9th Cir. 1992). The Secretary believes that *Town & Country* is materially and significantly distinguishable from the instant matter because *Town & Country* involved undisputed and finally-determined Medicare debts. No such determination has been pre-made by HHS in this case and the issue is, therefore, not ripe for judicial review. Accordingly, the resolution of this issue more appropriately belongs, in the first instance, to the Medicare review process, where such a determination can be made with the expertise and oversight intended by Congress. Defendant intended to seek interlocutory appeal of this important and impactful ruling after this Court's March 27, 2014 ruling on the Motion to Dismiss, but was unable to do so because Plaintiff failed to prepare an order, as directed by this Court, to be entered into the record. Instead, three months later, Plaintiff filed an Amended Complaint bringing new causes of action. The Secretary, therefore, had to wait

_____

[1] The Secretary is the real party in interest. *See* 42 U.S.C. § 1395kk(a) and 42 C.F.R. § 421.5(b). As such, reference to the Defendants will be made by reference to the "Secretary" or the "Defendant." Fed. R. Civ. P. 17(a)(1).

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 2 (13-01635-MLB)**

until the filing of the Amended Complaint before bringing this new motion on the pleadings, and to preserve her arguments going forward on the issue.

## **INTRODUCTION**

Based on a large body of controlling law in the Supreme Court and the Ninth Circuit, including a case initiated by Chapter 11 debtors-in-possession while in bankruptcy,[2] this Court is without jurisdiction to adjudicate the causes of action alleged in Plaintiff's Amended Complaint. *Town & Country* does not authorize any court, including a bankruptcy court, to adjudicate in the first instance any non-final dispute arising under the Medicare Act. Plaintiff can point to no controlling case in the Ninth Circuit which holds otherwise. At most, *Town & Country* is limited to the Secretary's Proof of Claim No. 82, which asserts a finally-determined and non-disputed debt owing by Plaintiff. Regarding all other causes of action in the Amended Complaint, however, *Town & Country* simply has no application in fact or law, and no interpretation of that case holds otherwise.

Essentially, Plaintiff is asking this Court to decide whether the pharmacogenomic molecular tests purportedly conducted by Natural Molecular Testing Corporation ("NMTC") and submitted for Medicare reimbursement are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). However, the Court is not authorized to stand in the shoes of the Secretary and replace her expertise in matters of Medicare administration, and no Ninth Circuit case stands for that proposition. To give *Town & Country* the scale of import that Plaintiff argues is to ignore a large body of controlling law, to disregard a carefully crafted administrative process designed by Congress and broadly delegated to the agency, and to substitute the Court for an entire agency.

---

2 *See Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1111-12 (9th Cir. 2003), filed by debtors in Chapter 11 possession, discussed more fully below.

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 3 (13-01635-MLB)**

Moreover, the Amended Complaint fails to state a claim upon which any relief can be granted. First, Plaintiff alleges an ongoing dispute arising under the Medicare Act and, therefore, fails to state a claim for relief as the Court is without jurisdiction to review and decide non-final matters. Second, bankruptcy proceedings govern only "property of the estate," which excludes disputed rights to payment. All of Plaintiff's suspended Medicare claims are under the Secretary's administrative investigation, as acknowledged by Plaintiff in the Amended Complaint, and therefore are "in dispute." Because the disputed funds are not "matured, payable on demand, or payable on order," Plaintiff can obtain no relief on the causes of action in the Amended Complaint.[3]

The Secretary brings this motion on a good faith belief that a large body of controlling legal authority holds that federal courts are without jurisdiction to decide in the first instance any non-final disputes arising under the Medicare Act. If the Court denies this motion, the Secretary requests the immediate entry of an order, as the Secretary is entitled to exhaust remedies and seek review of this critical and substantial legal question, one that impacts Medicare Trust Funds and may otherwise result in costly and cumbersome discovery proceedings, an unnecessary trial involving highly complex and technical issues on Medicare coverage, and a waste of judicial resources.

## STATUTORY AND REGULATORY FRAMEWORK

Plaintiff's reimbursement dispute with the Secretary arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, commonly known as "Medicare" or the "Medicare Act," which provides federal reimbursement for medical care to the aged and disabled. The Secretary administers the Medicare program through CMS. Medicare reimbursement for medical services

---

[3] At least with respect to Plaintiff's pre-petition claims, this is law of the case and already decided by the Court, which dismissed Plaintiff's claims concerning the turnover provisions and regarding a violation of the automatic stay on March 27, 2014. *See* (Dkt. 33) (Transcript).

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 4 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

under Part B (which applies to this case) is not automatic and, like private insurance policies, involves a number of qualifications and prerequisites for payment. *See*, *e.g.*, 42 U.S.C. §§ 1395k(a)(1), 1395l, 1395x(s), 1395y; *see also* 42 C.F.R. Part 410 (setting forth the conditions of payment and limitations on services for reimbursement under Medicare Part B).

The burden is on Plaintiff to show that a billed service is "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A); *see also Int'l Rehab. Sciences, Inc.* v. *Sebelius*, 688 F.3d 994, 997 (9th Cir. 2012) (citations omitted). The Secretary has broad interpretative authority to explicate the "not reasonable and necessary" coverage exclusion and to determine the kinds of services and items that are not covered. *See Heckler v. Ringer*, 466 U.S. 602, 617 (1984); *Int'l Rehab.*, 688 F.3d at 997 ("The government controls Medicare costs, among other ways, by denying coverage claims for items or services that are not 'reasonable and necessary' for treatment.").

The Medicare program is sometimes presented with reliable evidence that calls into question whether payments that have been made – or that are being made – to a particular provider or supplier are lawful and proper. In particular, evidence indicative of potential fraud and abuse may come to light on the basis of inquiries by a Zone Program Integrity Contractor ("ZPIC"), a Medicare contractor charged with identifying and investigating such problems. *See* 42 U.S.C. § 1395ddd. Where there is "a credible allegation of fraud," the Secretary is authorized to suspend all Medicare payments to a supplier pending the resolution of an investigation and a determination of whether payment is or was actually due. 42 U.S.C. § 1395y(o).

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 5 (13-01635-MLB)**

A payment suspension[4] is a temporary administrative measure used to gather and evaluate necessary data about the integrity of a supplier's Medicare claims. *Clarinda Home Health v. Shalala*, 100 F.3d 526, 531 (8th Cir. 1996); *see also* 42 C.F.R. § 405.370. CMS takes "subsequent action" to determine whether an overpayment exists. 42 C.F.R. § 405.372(c). Reasonable efforts are made to expedite the determination of any overpayment. *Id*. If a payment suspension is based upon credible allegations of fraud, however, the issuance of an overpayment determination may be delayed until "resolution of the investigation." *Id*. § 405.372(c)(2)(ii). Once an overpayment determination is made, a Medicare contractor will issue a notice to the supplier and explain the findings. The supplier is obligated to repay the overpayment. If a supplier disagrees with these findings, the supplier may submit an appeal through the Secretary's administrative appeals process, which includes a reconsideration of the findings, a hearing before an Administrative Law Judge and the presentment of evidence, and a review by the Medicare Appeals Council. 42 U.S.C. § 1395ff; *see* 42 C.F.R. §§ 405.904(a)(2), 405.920, 405.940, 405.960, 405.1000, 405.1100. Upon exhausting these administrative remedies, the supplier then may seek judicial review of the agency's final decision in the district court. 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. §§ 405.904 and 405.1136.

### STATEMENT OF FACTS

Plaintiff's relationship with the Medicare program arises under the Medicare Act as a "supplier" of laboratory tests. Plaintiff's Amended Complaint [Dkt. 55] ("Am. Cmpl.") ¶¶ 3.1-3.2; *see also* 42 U.S.C. §§ 1395x(d), (s)(3) and (16). In August 2012, AdvanceMed Corporation ("AdvanceMed"), a ZPIC, conducted an on-site review of claims at Plaintiff's business. Am. Cmpl.

---

4  Various data may lead to a suspension of payments. For example, a "credible allegation of fraud" includes, but is not limited to: (1) fraud hotline complaints, (2) claims data mining, or (3) patterns identified through audits and law enforcement investigations. 42 C.F.R. § 405.370(a).

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 6 (13-01635-MLB)**

¶ 3.40; Defendant's **Attachment A** ("Attachment A") at 5. On April 25, 2013, AdvanceMed issued

notice to NMTC advising that a payment suspension took effect on April 24, 2013. *Id.* at 1-3; Am.

Cmpl. ¶¶ 3.40-3.41. The payment suspension was based partly on information AdvanceMed had

obtained during the on-site review, in addition to "information provided by the ordering physicians

and a subsequent analysis of [NMTC's] billings." **Attachment A** at 1. AdvanceMed told NMTC

that the payment suspension involved "credible allegations of fraud."[5] *Id.* at 1; Am. Cmpl. ¶ 3.41.

NMTC submitted two rebuttal statements to this action. **Attachment A** at 4; Am. Cmpl. ¶

3.43. In a letter dated June 19, 2013, *id.* ¶ 3.43, CMS addressed many points raised in NMTC's

rebuttal and advised that the payment suspension would continue because the laboratory was

"furnishing a nearly identical battery of genetic testing for each patient regardless of the patients'

individual circumstances," which is beyond Medicare coverage policy. **Attachment A** at 4.

Further, CMS found that the underlying medical records of certain beneficiaries did not support the

recorded diagnoses and diagnosis codes reflected on Medicare claim forms submitted by NMTC. *Id.*

at 6. Finding that "[t]he ordering physician documented other conditions as the primary diagnosis in

the medical records," CMS asserted that the laboratory had "misuse[d]" the diagnosis code on

Medicare claims. *Id.* Finally, CMS explained that, in the absence of documentation to support the

medical necessity of a claim, a laboratory's failure to procure additional diagnostic and medical data

will justify denial of the claim. *Id.* at 6. Believing that Plaintiff's testing services were not

specifically related to the diagnosis or treatment of a disease for individual beneficiaries, CMS stated

---

5 Specifically, the notice informed Plaintiff that it had been billing claims for genetic molecular testing relating to drug sensitivities that "1.) have no relation to current Medicare policies on coverage which were provided to your laboratory during the on-site review, 2.) constitute screening tests for medications that patients may have or may not have been prescribed including Warfarin (Coumadin), and 3.) in some cases contained false diagnostic information." Attachment A at 2. (emphases added). The notice then provided examples of questionable claims. *Id.* at 1.

**DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS – 7
(13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

that such services were statutorily excluded from payment as "not reasonable and necessary" in accordance with the Medicare Act. *Id.* at 5. On October 21, 2013, CMS issued a second notice to NMTC extending the Medicare payment suspension to "both claims in process and future claims" for an additional 180 days and "until an investigation of the circumstances has been completed." *Id.* at 7; *see also* Am. Cmpl. ¶ 3.49. The notice restated the necessity based on "credible allegations of fraud." **Attachment A** at 7. On April 21, 2014, CMS directed AdvanceMed to extend the payment suspension for an additional 180 days based on these allegations and pending the ongoing investigation of the claims. *See* Am. Cmpl. ¶ 3.50; **Attachment A** at 8.

## ARGUMENT

A motion challenging subject matter jurisdiction may be raised at any time. Fed. R. Civ. P. 12(h)(3). A motion for failure to state a claim upon which relief can be granted is properly brought as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). "Rule 12(h)(2) should be read as allowing a motion for judgment on the pleadings, raising the defense of failure to state a claim, even after an answer has been filed. Under that interpretation, Rules 12(c) and 12(h)(2) together constitute a qualification of Rule 12(b)(6)." *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). A motion for judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999).

## I.     THIS COURT LACKS JURISDICTION OVER NON-FINAL MEDICARE DISPUTES

Bankruptcy courts are courts of limited jurisdiction. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *In re Valdez Fisheries Dev. Ass'n.*, 439 F.3d 545, 549 (9th Cir. 2006). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden

**DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS – 8
(13-01635-MLB)**

of establishing the contrary rests upon the party asserting jurisdiction." *In re Hunter*, 66 F.3d 1002, 1005 (9th Cir. 1995) (*quoting Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). This Circuit has made clear that bankruptcy jurisdiction does not lie simply "because the action could conceivably increase the recovery to the creditors[,] . . . [as] such a rationale could endlessly stretch a bankruptcy court's jurisdiction." *In re Pegasus Gold Corp., et al.*, 394 F.3d 1189, 1194 n.1 (9th Cir. 2005), *e.g.*, *see* Am. Cmpl. ¶ 3.77 ("CMS's continued withholding of the Withheld Funds . . . fails to maximize the value that could be obtained for the collective creditor body.").

A. The Amended Complaint Raises Federal Questions on Federal Claims, Thus, Pursuant to 42 U.S.C. §§ 405(g) and (h) their Resolution is Not Within the Subject Matter Jurisdiction of this Court

To begin, the most glaring deficiency regarding Plaintiff's Amended Complaint is that it fails to allege any jurisdictional basis for this Court's action. Plaintiff asserts this Court has "jurisdiction" under 28 U.S.C. § 157(b)(1). Am. Cmpl. ¶ 2.7. But section 157 does not create jurisdiction – that statute "does not have the hallmarks of a jurisdictional decree . . . Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court [ ]. That allocation does not implicate questions of subject matter jurisdiction." *Stern v. Marshall*, 131 S.Ct. 2594, 2607 (2011) (internal citations omitted).

Although Plaintiff fails to cite any jurisdictional basis, the Amended Complaint undeniably raises a federal question on federal claims, thus implicating 28 U.S.C. § 1331 and barring judicial review. And, 42 U.S.C. § 405(h) (as incorporated into the Medicare Act through 42 U.S.C. § 1395ii) is "a complete bar to federal question jurisdiction for claims arising under the Medicare Act… ." *Ass'n of American Med. Colleges v. United States*, 217 F.3d 770, 779 (9th Cir. 2000) (citing *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1 (2000)).

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 9 (13-01635-MLB)**

Indeed, the Medicare Act provides the sole avenue for judicial review of a Medicare reimbursement dispute, and that avenue arises only after a "final" administrative decision "made after a hearing," which has not occurred here. Specifically, 42 U.S.C. § 1395ff(b)(1)(A) provides: "any individual dissatisfied . . . shall be entitled to . . . judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title." In turn, 42 U.S.C. § 405(g) provides for review of the Secretary's decision by filing a civil action within sixty days after the Secretary's final decision notice. 42 U.S.C. § 405(h) makes clear that section 405(g) is the <u>exclusive</u> vehicle for a court's jurisdiction:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). Therefore, a Medicare claimant's access to the courts arises only after the presentment of a claim to the Secretary and a channeling of "all aspects" of that claim through the agency's administrative processes. *Illinois Council*, 529 U.S. at 12-13. Only when the Secretary issues a final agency decision after a hearing does the court obtain jurisdiction over the claim. *Id*. Without first meeting these fundamental requisites, which Plaintiff clearly has not done, Plaintiff cannot establish jurisdiction in this forum or in the district court.

This jurisdictional bar is firmly rooted in Supreme Court precedent and, as shown below, a large body of Ninth Circuit law interpreting Medicare matters. *See e.g*., *Illinois Council*, 529 U.S. at 12-13 ("all aspects" of any present or future Medicare claim must first be channeled through the Secretary's administrative process); *Heckler v. Ringer*, 466 U.S. 602, 614 (1984) (§ 405(h) is sufficiently broad to bar any court's review of all legal claims that are "inextricably intertwined"

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 10 (13-01635-MLB)**

with Medicare payment; the terms of the Medicare Act are the sole avenue of review); *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975) (§ 405(h) is "sweeping and direct" in its curtailment of litigation against Social Security programs and their administrators).

A complaint raises a federal-question whenever "a federal right or immunity is 'an element, and an essential one, of the plaintiff's cause of action.'" *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir. 2009). A federal question is also presented "over a federal-law claim simply by virtue of its being a claim brought under federal law." *Cook Inlet Region, Inc., v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012). Thus, on its face, the Amended Complaint is barred from any judicial review because it raises a federal question on a federal claim. The inquiry should end here, and the Amended Complaint should be dismissed.

No doubt Plaintiff will try to avail itself of some jurisdictional decree other than section 1331 to avoid this result, but it cannot escape the fact that its Amended Complaint pleads allegations and causes of action steeped wholly in the Medicare Act, including: Medicare scope of coverage of molecular pathology testing services,[6] Medicare coding requirements for molecular testing,[7] Medicare claims processing,[8] Medicare reimbursement rates, gap-filling procedures, and fee schedules for clinical laboratory services,[9] Medicare "prompt payment" requirements,[10] Medicare "advance payment" provisions and payment recovery rules,[11] Medicare zone program integrity

---

[6] Am. Cmpl. ¶¶ 3.4-3.8, 3.23.
[7] *Id.* ¶¶ 3.11-3.21, 3.31, 3.33.
[8] *Id.* ¶¶ 3.46-3.48, 3.58, 3.61, 3.71.
[9] *Id.* ¶¶ 3.9-3.15, 3.16-3.22.
[10] *Id.* ¶¶ 3.14, 3.59, 3.74.
[11] *Id.* ¶¶ 3.24-3.30, 3.32-3.33, 3.60, 3.62.

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 11 (13-01635-MLB)**

audits,[12] Medicare payment suspensions,[13] Medicare audits and investigations of suspended

claims,[14] Medicare overpayment determinations,[15] and Medicare recoupment procedures.[16]

Thus, there can be no doubt that the allegations and causes of action in the Amended

Complaint present a substantial federal issue on a serious federal interest arising under federal

Medicare law.  The Amended Complaint plainly raises a federal question over which no court may

exercise jurisdiction, absent administrative exhaustion, by operation of sections 405(g) and 405(h).

The Secretary believed that Plaintiff's Complaint lacked jurisdiction for these reasons.

Plaintiff's newest causes of action in the Amended Complaint, however, are even further afield of

jurisdiction than the original Complaint, and underscore ever more why this Court lacks jurisdiction.

Specifically, the Seventh through Tenth Causes of Action[17] – alleging unjust enrichment, *quantum

meruit*, breach of contract, and damages – all raise a federal question on federal issues that are

"inextricably intertwined" with Plaintiff's ongoing reimbursement dispute with the Secretary and

that "arise under" the Medicare Act solely because of Plaintiff's "Medicare relationship with the

government."  *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1114-1 (9th Cir. 2003).  This

Circuit has repeatedly held that courts lack jurisdiction over these causes of action because they arise

prior to final agency action and are, therefore, unripe for review.  *See Haro v. Sebelius*, 747 F.3d

1099, 1110-13 (9th Cir. 2014) (no federal court jurisdiction over Secretary's application of the

Medicare regulations) (citations omitted) (*see* Plaintiff's First, Second, Third, Fourth, and Sixth

Causes of Action);  *Do Sung Uhm v. Humana, Inc.*, 620 F. 3d 1134, 1144 (9th Cir. 2010) (no federal

---

[12] *Id*. ¶ 3.40-3.46.
[13] *Id*. ¶¶ 3.41 – 3.46, 3.41-3.52, 3.59-3.77.
[14] *Id*. ¶¶ 3.40-3.52, 3.65, 3.78-3.80.
[15] *Id*. ¶ 3.65, 3.78-3.80, 9.2-9.5.
[16] *Id*. ¶ 3.68.
[17]    The Sixth Cause of Action – raising substantive objections to the Secretary's Claim Nos. 82 and 83 – also
has limitations as explained below.

**DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS – 12
(13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

court jurisdiction over contract and unjust enrichment claims arising under the Medicare Act) (*see* Eighth, Ninth, and Tenth Causes of Action); *Kaiser*, 347 F.3d at 1114-15 (no federal court jurisdiction over tort and contract claims, including claims against a Medicare contractor) (*see* Fourth, Fifth, Seventh, and Tenth Causes of Action); *Ass'n of American Med. Colleges*, 217 F.3d at 773, 779, 785 (no federal court jurisdiction over action for declaratory and injunctive relief brought by Medicare providers seeking review of Secretary's reimbursement audits; such a complaint before final agency action is unripe for review) (*see* First, Fourth, Fifth, Sixth, Seventh Causes of Action); *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 592 (9th Cir. 1985) (no federal court jurisdiction to review suit seeking extra-Medicare monetary damages) (*see* Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action). Thus, because NMTC's Amended Complaint raises a federal question, absent administrative exhaustion, the Court is without subject matter jurisdiction by the express terms of 42 U.S.C. § 405(h).

   B. 28 U.S.C. § 1334 Does Not Alter the Fundamental Principle that Bankruptcy Courts Lack Subject Matter Jurisdiction To Address Non-Final Disputes Arising Under Medicare

   Even if Plaintiff claims its action arises under 28 U.S.C. § 1334 – despite its failure to cite any jurisdictional basis in the Amended Complaint – the Court still lacks jurisdiction. At bottom, Plaintiff is seeking payment of federal Medicare benefits, which are not created by federal bankruptcy law and that exist entirely outside of bankruptcy. Specifically, there is a separate statutory schema created by Congress outside the Bankruptcy Code, which mandates adjudication of Plaintiff's disputes within the Medicare Act. As the Secretary has shown, there is a carefully-crafted administrative process for determining whether Medicare benefits are actually owed Plaintiff and, if so, in what amounts. *See Int'l Rehab.*, 688 F.3d at 997 (describing Medicare administrative appeals process and jurisdictional provisions). There is plainly no section 1334 exception carved anywhere

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 13 (13-01635-MLB)**

in the Medicare statute or the federal jurisdictional statutes, or even in section 1334 itself, assigning bankruptcy courts priority position over the Secretary's decision-making in this regard or over her statutorily-charged procedures for determining disputed and non-final claims such as those here.

More to point, a bankruptcy court obtains its jurisdiction from the district court and, therefore, its jurisdiction cannot exceed that of the referring district court. Bankruptcy courts are courts of limited jurisdiction, and they obtain their powers through referral from the district courts, namely:

- 28 U.S.C. § 1334(a) grants original and exclusive jurisdiction to the district courts for all cases arising under title 11; and

- 28 U.S.C. § 157(a), a procedural statute, permits district courts to refer such cases to the bankruptcy courts.

*See also In re Ethington*, 150 B.R. 48, 52 (Bankr. D. Idaho 1993) ("Bankruptcy courts are units of the district court, and bankruptcy judges are judicial officers of the district court."). Thus, the jurisdiction of the bankruptcy court cannot exceed that of the referring district court. *See Johnston v. City of Middletown (In re Johnston)*, 484 B.R. 698, 713 (Bankr. S.D. Ohio 2012) ("Section 157 does not create jurisdiction when it does not exist under § 1334."); *see also Donahue v. Smith (In re Pinewood Buffet & Grill Inc.)*, 2013 Bankr. LEXIS 5450, 26-27 (Bankr. N.D. Ill. Dec. 30, 2013) ("bankruptcy courts have more limited jurisdiction than district courts").

As shown above, district courts conclusively lack jurisdiction to hear non-administratively exhausted Medicare claims. For example, in 2003 the Ninth Circuit decided *Kaiser*. [18] In that case, this Circuit definitively held that a district court lacked authority to hear Medicare reimbursement

---

18  As Chapter 11 debtors in possession, the Kaisers filed an action in district court challenging the Medicare contractor's withholding all Medicare reimbursement and alleging that the 100% recoupment action taken by the contractor forced the Kaisers to file under Chapter 11 in violation of statutory, regulatory, and constitutional law. Kaiser, 347 F.3d at 1110-11.

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 14 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5200
Seattle, Washington 98101
(206) 553-7970

matters, such as the ones presented here, prior to administrative exhaustion. 347 F. 3d at 1116.

Exhaustion is required to prevent "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Id.* (*quoting Salfi*, 422 U.S. at 765). Thus, the fact that district courts lack jurisdiction over ongoing reimbursement disputes arising under Medicare (per not only *Kaiser*, but also *Marin*, *Ass'n of American Med. Colleges*, *Do Sung Uhm*, and *Haro*) means that they cannot assign jurisdiction for such disputes to the bankruptcy courts, even by referral under section 157. Plaintiff can offer no explanation why a district court is barred from "premature interference with agency processes" to decide a Medicare dispute, but a bankruptcy court is not. And, there is nothing in 28 U.S.C. § 1334 or *Town & Country* that provides otherwise. Because a district court lacks jurisdiction to hear these claims, and the bankruptcy court obtains its jurisdiction from the district court, the bankruptcy court cannot, as a matter of law, acquire jurisdiction over these claims either. For these reasons, a complaint filed in the district court alleging jurisdiction over these matters even under section 1334 would find no standing.

Plaintiff has offered no explanation, nor can it, why the bankruptcy court should stand first in line to decide technical and complex Medicare coverage and payment issues long before the Secretary has made a final decision based upon a developed administrative record. *See Salfi*, 422 U.S. at 765, *Kaiser*, 347 F.3d at 1116. Even the Supreme Court recognizes that it lacks authority to determine Medicare benefits: "[o]ur task is not to decide which among several competing [Medicare] interpretations best serves the regulatory purpose." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *see also Wilkins v. Sullivan*, 889 F.2d 135, 140 (7th Cir. 1989) (Medicare

**DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS – 15
(13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

coverage decisions are "precisely th[e] type of decision – made within the context of an extremely technical and complex field – that courts should leave in the hands of expert administrators.").

Furthermore, when a Medicare claim is properly presented to the courts after a final agency decision (which has not occurred here), even then the Secretary's interpretation of her own regulations is given heightened status and receives "substantial deference" by the district court.[19] *Thomas Jefferson Univ.*, 512 U.S. at 512; *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843-45 (1984). Deference is particularly warranted in the Medicare context because "the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Thomas Jefferson Univ.*, 512 U.S. at 512 (citation omitted). Surely the bankruptcy courts stand in no better position than the Supreme Court to decide disputes such as those here implicating Medicare coverage and payment policies and requiring technical Medicare interpretations. Plaintiff seeks to bypass the Secretary's interpretation of her own regulations and substitute the Court's judgment for that of the Secretary's. Plaintiff's attempted litigation of these matters in this forum is "tantamount to [seeking] *de novo* review," but that simply "is not permitted." *Int'l Rehab.*, 688 F.3d at 1002 (district court does not have "license" to choose Medicare interpretations).

Essentially, Plaintiff asks this Court to step in the shoes of the Secretary and decide in the first instance whether its pharmacogenomic molecular testing services were "reasonable and necessary for the diagnosis or treatment of illness or injury" under Medicare coverage and exclusion policies. 42 U.S.C. § 1395y(a)(1)(A). If this litigation proceeds, this Court must necessarily decide

---

19  The Medicare Act provides for Article III court review, but not Article I review, of a final agency decision made after a hearing. 42 U.S.C. §§ 405(g), 1395ff(b)(1)(A).

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 16 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

these technical issues because, at bottom, Plaintiff seeks coverage of its Medicare claims and turnover of the suspended Medicare funds. The Secretary presently disputes, however, whether any of the suspended funds are actually owed NMTC. As the Amended Complaint acknowledges, *see infra* Argument II at 22 n.24, the Secretary is investigating the propriety of Plaintiff's claims to determine whether they are excluded, or should have been excluded, from Medicare coverage. Therefore, were the Court to adjudicate Plaintiff's entitlement to suspended funds, and whether the funds are "property of the estate," the Court must necessarily decide whether NMTC's molecular tests are "reasonable and necessary" pursuant to statute, regulation, program manual guidance, and Medicare coverage policy.[20] These are matters that exist entirely outside of bankruptcy, finding anchor in a separate federal statutory scheme, and are way beyond the purview of section 1334.[21]

C.   *Town & Country* Does Not Authorize a Bankruptcy Court to Review or Decide Disputed Claims Arising Under the Medicare Act Before a Final Agency Decision

These bedrock principles of administrative law, including the requisite deference the courts must afford the Secretary in interpreting her own regulations, illustrate why *Town & Country* has no application here. In that case, neither the bankruptcy court nor the Ninth Circuit confronted the arduous task of explicating Medicare coverage policy in the first instance and deciding whether Medicare reimbursement was actually due the debtor and, if so, in what amounts. Instead, *Town &*

---

20  By the allegations in the Amended Complaint, for example, this Court will be tasked to decide whether the molecular diagnostic testing protocols, purportedly utilized by NMTC, measured the correct "biological markers in an individual's genetic code and how cells express the individual's unique genes as proteins." Am. Cmpl. ¶ 3.5. The Court must also determine whether Medicare beneficiaries were prescribed "certain types of medication" and pharmocogenomic tests were actually ordered by physicians, thereby producing test results that were actually "used by physicians" to "manage their treatment of their patients' diagnosed illness(es)." *Id.* All of these issues implicate Medicare coverage policy. And, even if these services were covered by Medicare, which remains to be seen, the Court then must broach the next hyper-technical step and decide the appropriate reimbursement rates for these services, which depend on Medicare coding procedures, Medicare fee schedules, and gap-filling rates in the absence of fee schedules. *Id.* ¶¶ 3.9-3.22.

21  As a practical matter, deciding the merits in this forum will also result in a costly and cumbersome trial.

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 17 (13-01635-MLB)**

*Country* involved an already-determined overpayment amount *(i.e.*, a debt) that was owed Medicare by the debtor, who <u>did not contest</u> the debt. 963 F.2d at 1148.

There, the debtor accepted the government's calculations wholesale and did not request the bankruptcy court to decide the validity or amount of the Medicare debt. *Id.* Further, both the debtor and the Secretary <u>conceded</u> that "[Medicare] payments are otherwise due and payable to T & C." *Id.* Hence, the bankruptcy court held in hand a final agency determination regarding mutual debts, which neither the debtor nor the government disputed. *Id.* at 1148, 1154. Given these mutual debts, the Medicare contractor deducted *(i.e.*, offset) property of the bankruptcy estate – that is, undisputed Medicare payments actually due the debtor – from the amount of the overpayment, and continued doing so after the petition. *Id.* at 1148. Here, the Secretary disputes whether any of the suspended Medicare funds are property of the debtor's estate, and she is absolutely allowed by law and public policy to investigate these claims to determine their validity and whether they should be paid.

The real question presented in *Town & Country*, therefore, was not whether the bankruptcy court had jurisdiction to step in the shoes of the Secretary and adjudicate an ongoing Medicare reimbursement dispute – which Plaintiff seeks here – but whether the government improperly had utilized "self-help collection efforts" by "offsetting" undisputed debts after the filing of a petition. *Id.* at 1149. That question is not before this Court.

The Ninth Circuit simply did not hold that a bankruptcy court may decide the validity or amount of disputed and non-final Medicare claims before final agency action, and no strained reasoning of *Town & Country* can support such a proposition. As applied to Plaintiff's Sixth Cause of Action objecting to the Secretary's Claim Nos. 82 and 83, *Town & Country* also does not stand for the proposition that a bankruptcy court may decide a future Medicare debt or reopen the merits of a past Medicare debt that has been finally determined by the agency. Given this Circuit's oft-

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 18 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

repeated stance on these jurisdictional issues, there is no reason to believe the Court of Appeals would apply any different reasoning here.

To explain, Claim No. 83, as acknowledged by NMTC in its Amended Complaint, *id.* ¶¶ 3.78-3.80, represents an unliquidated, contingent claim "to be determined" upon resolution of the Secretary's "investigating" suspended Medicare claims based on allegations of fraud. Given that this claim represents a non-final action, Plaintiff cannot now use its adversary complaint in this forum as "a backdoor attempt to enforce the [Medicare] Act's requirements and to secure a remedy for [the Secretary's] alleged failure to provide benefits." *Do Sung Uhm*, 620 F.3d at 1143.

Claim No. 82 (unsecured), on the other hand, represents a final determination by Noridian of a mature debt owed by NMTC to Medicare in the amount of $66,200.46 with regard to specific pre-petition claims. *See* Am. Cmpl. ¶ 3.80. Noridian issued these findings of overpayment in letters sent to Plaintiff. *Id.* Given Plaintiff's failure to pursue any administrative review of these findings, as required by section 405(g), the overpayment determination in Claim No. 82 represents final agency action, and Plaintiff has waived any right to contest the merits of this debt here. The Secretary agrees that the Court may consider the priority status of Claim No. 82 and other matters applicable to setoff. [22] In that light, the Secretary concurs that further administrative exhaustion is not required (as Plaintiff has waived administrative remedies) and, to that extent, the rationale of *Town & Country* does apply to this claim. But the Secretary does not agree that the Court may otherwise reopen Claim No. 82 and adjudicate the merits or the amounts already determined under Medicare law. *Town & Country* does not support any contrary conclusion.

---

22 To the extent that 11 U.S.C. § 553 applies, *Sims v. U.S. Dep't of Health and Human Servs. (In re TLC Hosps., Inc.)*, 224 F.3d 1008, 1011-13 (9th Cir. 2000), a case decided eight years after *Town & Country*, clearly permits the Secretary to apply her recoupment procedures to recover outstanding pre-petition overpayments from post-petition underpayments.

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 19 (13-01635-MLB)**

For these reasons *Town & Country* has no application.  But that case is further

distinguishable on other key points:

1.　　*Town & Country* primarily examined "waiver of sovereign immunity" under

11 U.S.C. § 106(a), holding that government "offsets" against assets of the estate comprised an

informal proof of claim and thus waived immunity.  *Town & Country*, 963 F.2d at 1148-1155.  But

two years after *Town & Country* was decided, Congress amended section 106 by adding

subparagraph (a)(5):  "Nothing in this section shall create any substantive claim for relief or cause of

action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or

nonbankruptcy law."  11 U.S.C. § 106(a)(5).  Furthermore, even if the government does waive

sovereign immunity by filing a proof of claim, as the Secretary did here, such action <u>does not create</u>

subject matter jurisdiction to determine disputed claims arising under the Medicare Act.  As the

Ninth Circuit recently stated:

> We have occasionally "mistakenly equate[d] sovereign immunity with lack of subject
> matter jurisdiction." . . . Although the concepts are related, sovereign immunity and
> subject matter jurisdiction present distinct issues . . . A waiver of sovereign immunity
> means the United States is amenable to suit in a court properly possessing
> jurisdiction; it *does not* guarantee a forum . . . "To confer subject matter jurisdiction
> in an action against a sovereign, in addition to a waiver of sovereign immunity, there
> must be statutory authority vesting a district court with subject matter jurisdiction."

*U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 923-24 (9th Cir. 2009) (emphasis in original)

(quoting *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007)).  Therefore,

even if the Secretary has waived sovereign immunity by filing a claim, there still is no statutory

authority vesting this Court with subject matter jurisdiction to decide the non-final Medicare

disputes alleged in the Amended Complaint.

2.　　In its nine-page decision, the *Town & Country* panel expended one paragraph on

42 U.S.C. § 405(h), *id.*, 963 F.2d at 1155, without examining any of the statute's legislative history,

**DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS – 20
(13-01635-MLB)**

which otherwise supports the Secretary's jurisdictional arguments here.[23]  Notably, in construing

Congress' intent on the grant of jurisdiction issue, *id.*, 963 F.2d at 1154-55, *Town & Country* relied

on a version of 11 U.S.C. § 106(a) that no longer exists.  Congress' addition of section 106(a)(5) in

1994 reflects its revised intent and makes clear that the statute does not create any substantive claim

for relief not otherwise existing under Title 11 or nonbankruptcy law.  11 U.S.C. § 106(a)(5).  And,

although *Town & Country* cited the third sentence of section 405(h), it did so without acknowledging

the second sentence, which mandates that: "[*n]o findings of fact or decision* of the Secretary *shall be

reviewed* by any person, tribunal, or governmental agency except as herein provided [by means of

administrative exhaustion]."  42 U.S.C. § 405(h) (emphasis added).  To review one sentence of the

statute, but not the remainder, is "at odds with one of the most basic interpretive canons, that '[a]

statute should be construed so that effect is given to all its provision, so that no part will be

inoperative or superfluous, void or insignificant ….'"  *Corley v. United States*, 556 U.S. 303, 314,

129 S.Ct. 1558, 1567 (2009) (internal citations omitted).

To conclude, through a long line of case authority in the Supreme Court and the Ninth

Circuit, there is no jurisdiction to adjudicate non-final disputes arising under Medicare.

## II.  SUSPENDED MEDICARE FUNDS ARE NOT PROPERTY OF THE ESTATE THEREFORE THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

The lack of federal court jurisdiction under section 405(h) is dispositive of Plaintiff's action.

The Amended Complaint should also be dismissed, however, because it fails to state a claim upon

---

23  The Ninth Circuit apparently was not asked to examine the legislative history of this statute.  Other courts
that have reviewed this history have readily concluded that section 405(h) bars "virtually all of the
jurisdictional grants to the district courts."  *In re St. Johns Home Health Agency*, 173 B.R. 238, 244 (Bankr.
S.D. Fla. 1994) (no bankruptcy jurisdiction);  *see also Excel Home Care, Inc. v. U.S. Dep't of Health and
Human Servs.*, 316 B.R. 565, 572 (D. Mass. 2004) (no bankruptcy jurisdiction);  *Bodimetric Health Servs,
Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 489 (7th Cir. 1990) (no diversity jurisdiction); *Midland Psychiatric
Assocs. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998) (no diversity jurisdiction).

**DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS – 21
(13-01635-MLB)**

which any relief may be granted.  By the express terms of the Amended Complaint, Plaintiff

acknowledges that all suspended Medicare claims – pre- and post-petition – are under investigation

pending CMS review.  For example, Plaintiff acknowledges that CMS is investigating all of

NMTC's pre- and post-petition Medicare claims pending an "amount to be determined upon

resolution of a post-payment Program Integrity Medical Review of the Debtor's Medicare claims."

Am. Cmpl. ¶ 3.79; *see also id*. ¶ 3.65 ("Defendants claim . . . they are 'investigating'" all "Withheld

Funds").[24]  Given this ongoing investigation of Plaintiff's claims, the suspended Medicare payments

are "in dispute" and, therefore, do not comprise property of the estate.

For this reason, turnover relief under 11 U.S.C. § 542(b) is not available as a matter of law.

Turnover under section 542 may only be used when the claim of right to property is already

"matured, payable on demand, or payable on order."  *Gravel Express, Inc. v. Meadow Valley*

*Contrs*., 2000 U.S. App. LEXIS 15720 (9th Cir. June 30, 2000).  Turnover, however, cannot be

applied against property that is "in dispute."  *United States v. Inslaw, Inc*., 932 F.2d 1467, 1472

(D.C. Cir. 1991) ("It is settled law that the debtor cannot use the turnover provisions to liquidate

contract disputes or otherwise demand assets whose title is in dispute."); *see also Charter Crude Oil*

*Co. v. Exxon Co., U.S.A*., 913 F.2d 1575, 1579 (11th Cir. 1990); *In re Andrew Velez Constr., Inc*.,

373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007) (debtor cannot use turnover provisions to liquidate

contract disputes); *In re Student Finance Corp*., 335 B.R. 539, 554 (Bankr. D. Del. 2005) (turnover

actions "cannot be used to demand assets whose title is in dispute").

---

24  *See also id*. ¶ 3.79 ("'the Secretary has not finally determined an overpayment owed by the Debtor'" and
"Defendants" have been "investigating NMTC for a full year" "as to the claims submitted")  (quoting Claim
No. 83); and, *id*. ¶ 9.2 ("'This suspension has temporarily halted payments to the Debtor, pending resolution
of an investigation of claims – past and present – thereby allowing CMS to verify whether they were/are valid
claims and whether they were/are being appropriately paid.'") (quoting Claim No. 83).

**DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS – 22
(13-01635-MLB)**

In the Medicare program, the possibility of fraudulent claims provides grounds for the Secretary to suspend payments to the claimant submitting them (42 U.S.C. § 1395y(o); 42 C.F.R. § 405.371(a)(2)), and, in doing so, renders such payments "in dispute." *See In re The Orthotic Ctr., Inc.*, 193 B.R. 832, 834 (N.D. Ohio 1996) (Secretary's fraud suspension was not a seizure of property of the estate because debtor's right to receive payments was in dispute, and "the payments are not the property of the debtor until the dispute is decided in its favor"); *see also In re Guiding Light Corp.*, 217 B.R. 493, 496, 498 (Bankr. E.D. La. 1998) (no property interest in Medicaid payments for claims pending investigation for fraud because "[t]he estate's interest in property . . . can rise no higher than that of the debtor's interest in the property").

This limitation on turnover also curtails the scope of the automatic stay under section 362, which no more than section 542 can be used to adjudicate claims for property or payments that are in dispute. As *Inslaw* held, a contrary reading "would turn every act of the possessor that implicitly asserts his title over disputed property into a violation of § 362(a)," and "give the bankruptcy court jurisdiction over all such disputes, creating a kind of universal end-run around the limits on turnover." *Inslaw*, 932 F.2d at 1473. Applying this reasoning here, Congress certainly did not intend the public's trust funds to be sequestered wholesale by a debtor's estate without any regard for its carefully crafted administrative route compelled by the Medicare Act.

Simply put, Plaintiff's claims are not "matured, payable on demand, or payable on order." Unless the ongoing Medicare reimbursement dispute is resolved in Plaintiff's favor, which can be adjudicated only through administrative exhaustion under the Medicare Act and then reviewed by the courts with substantial deference to the Secretary's decision, these funds do not comprise property of the estate. Because Plaintiff is not entitled to payment of any of the withheld funds as a matter of law, there is no relief available on the Amended Complaint. *See In re Orthotic Ctr.*, 193

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 23 (13-01635-MLB)**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

B.R. at 834 ("Secretary's suspension of [Medicare] payments was not equivalent to the seizure of property of the estate because the right to receive payments is in dispute, and the payments are not the property of the debtor until the dispute is decided in its favor."). Accordingly, Plaintiff can prove "no set of facts" in support of its claims entitling it to the requested relief. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). The Amended Complaint should be dismissed, as well, for its failure to state a claim for any relief.

## CONCLUSION

For these reasons, the Secretary respectfully requests this Court to grant its motion and dismiss Plaintiff's Amended Complaint.

DATED this 18th of July, 2014.

Respectfully submitted,

JENNY DURKAN
UNITED STATES ATTORNEY


 /s/ *Christina Fogg*
CHRISTINA FOGG, WSBA 40159
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-4299

Of Counsel:

William B. Schultz, General Counsel
Pamela K Parker, Chief Counsel, Region X
Janet Freeman, Assistant Regional Counsel
Office of the General Counsel
U.S. Department of Health and Human Services
701 Fifth Avenue, Suite 1600, MS/10
Seattle, Washington 98104
Phone: 206-615-2268

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS – 24 (13-01635-MLB)**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers. I also certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant(s):

Charles L. Butler        eshea@hackerwillig.com, debbie@hackerwillig.com; donna@hackerwillig.com; arnie@hackerwillig.com; kristen@hackerwillig.com; alena@hackerwillig.com; charlie@hackerwillig.com; doug@hackerwillig.com; ashley@hackerwillig.com; leah@hackerwillig.com; melissa@hackerwillig.com

Elizabeth H. Shea       eshea@hackerwillig.com, debbie@hackerwillig.com; donna@hackerwillig.com; arnie@hackerwillig.com; kristen@hackerwillig.com; alena@hackerwillig.com; charlie@hackerwillig.com; doug@hackerwillig.com; ashley@hackerwillig.com; leah@hackerwillig.com; melissa@hackerwillig.com

Arnold M. Willig        arnie@hackerwillig.com, debbie@hackerwillig.com; donna@hackerwillig.com; kristen@hackerwillig.com; alena@hackerwillig.com; charlie@hackerwillig.com; doug@hackerwillig.com; ashley@hackerwillig.com; eshea@hackerwillig.com

Frank T. Pepler        frank.pepler@dlapiper.com, Carolyn.ernser@dlapiper.com

Lawrence J. Freedman   ljfreedman@mintz.com

//

//

//

//

**DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS – 25
(13-01635-MLB)**

I further certify that on this date, I mailed by United States Postal Service the foregoing document to the following non-CM/ECF participant(s)/CM/ECF participant(s), addressed as follows:

Hope Foster
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
701 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20004

Tracy A. Miner
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111

Dated this 18th day of July 2014.

/s/ Crissy Leininger
CRISSY LEININGER
Supervisory Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax: 206-553-4067
E-mail: christine.leininger@usdoj.gov

**DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS – 26
(13-01635-MLB)**